FRY *vs.* THE BRANCH BANK AT MOBILE.

1. The levy of an execution on real estate does not divest the title of the defendant, and if the execution is retured without a sale, and the defendant die before any further proceedings are had thereon, the title descends to the heirs at law.

2. In this State, an action of trespass *quare clausum fregit* to recover mesne profits will not lie in favor of a disseissee, unless he has *regained the possession*, and that too *by entry.*

Error to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

This was an action of trespass *quare clausum fregit*, instituted by the plaintiff against the defendant in error for rents and profits of the premises mentioned in the declaration. The case was submitted to the judgment of the court below on an agreed state of facts, which so far they are necessary to be recited are as follows: William W. Fry, the ancestor of the plaintiff and George W. Fry owned the premises jointly. In 1839, William W. Fry died, but before his death, the defendant recovered a judgment against him in the County Court of Mobile, on which execution issued and was levied on the premises in question. The execution was returned without a sale, and no further proceeding was had under this levy, until 1844, when a venditioni exponas issued, and was delivered to the Marshal of the Bank, who proceeded to sell and make a deed for the premises to the defendant, the purchaser at the sale. After the sale the defendant, finding Foster & Battelle and another in possession of the premises under a lease from George H. Fry, threatened to dispossess them, unless they would pay rent to the defendant to the extent of W. W. Fry's interest in the premises, and thereupon they acknowledged themselves to be the tenants of the defendant and paid the defendant one half the rent, until the property was placed in charge of a receiver by the Chancery Court of Mobile at the instance of certain persons who held a mortgage on it, executed by William W. Fry in 1835. The amount of rent received by the defendant was $950. Before the purchase by

defendant, the estate of W. W. Fry had been declared insolvent. The court rendered judgment for the defendant, and the plaintiff now assigns it as error.

P. PHILLIPS, for the plaintiff:

1. The venditioni exponas issued after the death of Fry was void, and consequently the Bank could derive no title under it. Erwin's lessee v. Dundas, 4 Howard, 58; Abercrombie v. Hall, 6 Ala. Rep. 657.—Again, the writ was directed to the sheriff, and could not be executed by the Bank Marshal. Adamson v. Parker, 3 Ala. Rep. 727; Gresham v. Leveritt, 10 ib. 384; Governor v. Lindsay, 14 ib. 658.

The questions are, can trespass be maintained by an heir, and is the defendant subject to the suit? It is said by Plowden, that an heir could not maintain trespass; the reason is, that by the decisions in England, *actual* possession is necessary to maintain the suit, but in this State, as in most of the other States, the rule is otherwise, and where there is no adverse possession in another, the possession will *constructively* attach to the title. Rowland v. Rowland, 8 Ohio, 40; Robinson v. Douglass, 2 Ark. Rep. 364; Wilcox v. Kenzie, 3 Scam. 224; Kenedy v. Wheatly, 2 Hay. 402; Gillespie v. Dew, 1 Stewart, 229; Blevens v. Cole, 1 Ala. Rep. 210; Ledbetter v. Fitzgerald, 1 Pike, 448; Congregational Society v. Baker, 15 Verm. 119; Dobbs v. Galledge, 4 Dev. & Bat. 68; Bulkles v. Dobbear, 7 Conn. 233.

If the tenants of their own will had held over for 1845, they would be trespassers, as much so as if they had not obtained possession legally for the previous year. Conway v. Starkweather, 1 Denio. 113; Doe v. Adams, 7 Halst. 99; Danforth v. Sargent, 14 Mass. 491; Bedford v. McEtherson, 2 S. & R. 49. If they held by the direction of the Bank acting as landlord, and receiving the rent, the Bank would be as much liable in this action as if it had entered upon the premises and used them for its own purpose. Gregory v. Piper, 9 B. & C. 591; Clifton v. Grayson, 2 Stewart, 412. Every unwarranted entry upon another's land is a trespass, and a void license is no justification. Wells v. Howell, 19 Johns. Rep. 385; Chandler v. Edson, 9 ib. 362.

J. T. TAYLOR, for defendant:

1. Is not the title of the Bank only *voidable*—16 Johns. 537; 1 Chip. 390; 2 Halst. 180; 4 Watts. 367; 2 N. S. 730; 4 Whart. 339; 5 G. & J. 359.

2. The levy in the lifetime of W. W. Fry, divested him of title, and nothing decended to his heirs—3 Gilp. D. C. R. 54–51; Litt. Sel. Cases, 29; 1 Cond. (U. S.) Rep. 519; 3 Mass. 525.

3. One dissiezed cannot maintain trespass until after entry made, though he has the best title, and the entry and levy of the sheriff was a virtual dissiezin of plaintiff's ancestor—4 Greenl. 16; 1 Shiply, 87; 20 Maine Rep. 223; Mass. 525; 1 Metc. 528; 10 Pick. 161; 17 Mass. 299; 15 Mass. 414; 4 Mass. 416.

To maintain trespass plaintiff must have had actual possession, or else the *immediate right* to possession—See U. S. Digest, 3d vol. 530, and cases cited. And the possession of a lessee, is not sufficient—3 McCord, 432; 1 Hill, S. C. 260; 8 Pick. 235; 8 Mass. 411–415; 1 Johns. 511.

DARGAN, J.—Two questions are presented for the consideration of the court. First, did the levy and sale pass the title of W. W. Fry the ancestor of the plaintiff, to the Bank? Secondly, if it did not, will trespass *quare clausum fregit* lie, under the facts agreed on to recover the rents received by the Bank?

Although the levy had been made on the land by virtue of the original *fi. fa.*, yet as it was returned without a sale, and nothing further was done to enforce the lien acquired by the judgment, for more than four years, and after the estate of W. W. Fry was declared insolvent, it is very clear, that the lien was lost, and that the sale gave the Bank no title. Fitzpatrick v. Edgar, 5 Ala. 499; Burk's adm'r v. Jones & Allen, 14 Ala. 167; see also Lucas v. Price, 4 Ala. 679; Abercrombie v. Hall, 6 Ala. 657. It is however contended, that as the levy was made before the death of W. W. Fry his title was divested, and therefore his heir took nothing by descent. We will not here enquire what would have been the effect of a sale under the original *fi. fa.* before its return, but after the death of Fry, by virtue of a levy made during his life. But as no sale was

made under that process before its return, nor any further proceedings taken until the estate of Fry was duly declared insolvent, no title passed by the sale to the Bank. A levy on real estate, under our statutes, unlike a levy on personalty, does not invest the sheriff with the title; he cannot by force of the levy, enter upon or oust the defendant, or receive the rents and profits; but the title remains in the defendant until the sale and execution of the deed by the sheriff, by which the title of the defendant in execution passes to the purchaser, and he may then bring ejectment to recover the possession. As the levy did not divest the title of W. W. Fry, it remained in him until his death, and then descended to his heir at law.

2d. Will trespass *quare clausum fregit* lie, to recover of the Bank the rents received by it? As no actual injury was done to the premises, nor the plaintiff put out of possession by force, trespass to recover the *mesne* profits can only be sustained upon the ground that the facts constitute a *disseizin* in law. We, however, will decline an examination of the question, whether the facts do constitute a technical *disseizin* of the plaintiff, or whether he might elect to consider himself disseized, for if it were admitted, that under the circumstances, he was disseized, and the defendants were the disseizors, yet the action of trespass *quare clausum fregit* would not lie to recover the mesne profits; for the plaintiff has never regained the possession either by suit or by entry; and it is well settled at common law, that trespass will not lie to recover rents or mesne profits, until the owner, who was disseized, has recovered in ejectment, or in some other manner regained possession—then he may maintain this suit for the recovery of the mesne profits; for after an entry by the lawful owner, or after he has recovered in ejectment, the law, by a kind of *jus postliminii*, supposes the free-hold all the time to have continued in him. Chit. Pleadings, vol. 1, 177; 19 Wend. 507; Graham v. Houston, 4 Dev. 232; Shields v. Henderson, 1 Littell, 239; 4 Cowen 329. By statute, however in this State, a plaintiff who regains possession by action of ejectment or trespass to try titles, may recover the rents in that action by way of mesne profits, and therefore cannot be permitted to bring trespass *quare clausum fregit* to recover the rents where he has recovered possession in either of these actions. Cummings, et al. v. McGehee, 9

Porter, 349. Consequently the action can only be sustained in this State, in those cases where the dissiezee has regained possession without a suit in which he could have recovered the value or amount of the rents. The facts admitted show that the defendants continued to receive the rents until a receiver was appointed to receive them, under an order of the Chancery Court, made in a suit brought on the mortgage, executed in 1835, by W. W. Fry to Remsen & Eslava. We are not at liberty under this evidence to infer that the plaintiff has ever regained the possession of the premises, even if we could consider, that the acts of the defendant amounted to a disseizin of the plaintiff. Under this view of the case, there is no error in the record, and the judgment must be affirmed.